IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>CHARLES A. POWELL and<br>JANIS P. POWELL,</td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Action No. PX 16-1201</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>COUNTRYWIDE BANK, FSB et al.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

******

## MEMORANDUM OPINION

Pending in this consumer lending case is a motion to dismiss for failure to state a claim filed by Bank of America, N.A., individually and as successor by merger to Countrywide Bank, FSB and Countrywide Home Loans Servicing, LP; Countrywide Home Loans Inc.; and Mortgage Electronic Registration Systems, Inc. ("MERS"). ECF No. 25. Janis and Charles Powell (collectively, "Plaintiffs") have also requested leave to amend their Amended Complaint. ECF No. 28 at 3–4. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the Defendants' motion to dismiss is granted and Plaintiffs' motion to amend is denied.

## I.    BACKGROUND

The facts outlined here are taken from the Plaintiffs' Amended Complaint and public records attached to the Defendants' motion to dismiss.[1] Unless otherwise noted, all facts are construed in the light most favorable to the Plaintiffs as the nonmoving parties.

---

[1] This Court may take judicial notice of matters of public record without converting this motion to dismiss into one for summary judgment. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Deed of Trust and the assignments of the Deed of Trust attached to Defendants' motion to dismiss are recorded in the Land Records of Prince George's County and will thus be considered as public records.

On January 10, 2008, the Plaintiffs appear to have executed a loan in favor of

Countrywide Bank, FSB ("Countrywide Bank") for $638,600 for real property located at 11404

North Star Drive, Fort Washington, Prince George's County, Maryland. ECF No. 25-2. The loan

is evidenced by a promissory note ("Note") and secured by a Deed of Trust, executed on the

same date as the Note, and which was recorded among the Land Records of Prince George's

County, Maryland. *Id.* The Deed of Trust named Mortgage Electronic Registration Systems, Inc.

("MERS") the beneficiary under the security interest as the nominee for the lender, Countrywide,

its successors, and assigns.[2] *Id.*

In executing the security instrument, the Plaintiffs agreed that "MERS holds only legal

title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply

with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the

right: to exercise any or all of those interests, including, but not limited to, the right to foreclose

and sell the Property; and to take any action required of Lender including, but not limited to,

releasing and canceling this Security Instrument." *Id.* at 3.

The Deed of Trust states that "[t]he Note or a partial interest in the Note (together with

this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id.* at

8. The Deed of Trust also clearly states that Plaintiffs' obligations remain the same, regardless of

whether the Note is sold: "If the Note is sold and thereafter the Loan is serviced by a Loan

---

[2] This is a typical practice. MERS is a corporation established in the mid-1990s to eliminate the need to record assignments and related documents in county property recorder's offices. Before MERS, recording the assignment of the mortgage in the local land records made buying and selling mortgage-backed loans a tedious process. *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1073 (R.I. 2013) ("The MERS® System was developed to bring efficiency and order to this increasingly complex industry."). MERS created a computer database that tracks servicing and ownership rights of mortgage loans. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1361 (2010). Mortgage lenders often list MERS as the "mortgagee of record" on the paper mortgage rather than the lender. MERS remains the mortgagee for the life of a mortgage loan even after the original lender or a subsequent assignee transfers the loan. *Id.* at 1361–62.

Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to

Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and

are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *Id.*

In February 2012, MERS, acting as nominee for Countrywide Bank, executed and

recorded a Corporate Assignment of Deed of Trust in the Land Records for Prince George's

County, Maryland, which granted all beneficial interest under the Deed of Trust to Defendant

Bank of America, N.A. ECF No. 25-3. In September 2015, Plaintiffs' Note was pooled with

several other notes in a residential mortgage-backed securitization trust, LSF9 Master

Participation Trust. ECF No. 25-4.[3] An Assignment of Mortgage/Deed of Trust from Bank of

America to the Trust was recorded in the Prince George's County Land Records on November 4,

2015. ECF No. 25-4. As the Maryland Court of Appeals has explained:

> [s]ecuritization starts when a mortgage originator sells a mortgage and its note to
> a buyer, who is typically a subsidiary of an investment bank. The investment bank
> bundles together the multitude of mortgages it purchased into a "special purpose
> vehicle," usually in the form of a trust, and sells the income rights to other
> investors. A pooling and servicing agreement establishes two entities that
> maintain the trust: a trustee, who manages the loan assets, and a servicer, who
> communicates with and collects monthly payments from the mortgagors.

*Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 718 (2013) (quoting *Anderson v. Burson*,

424 Md. 232, 237 (2011)).

Plaintiffs allege that these assignments were improperly executed by "robo signing

agents" and thus the Defendants "do not have lawful ownership or a security interest in

Plaintiff's [sic] home." ECF No. 24 at 4. Plaintiffs also maintain that their loan was not properly

---

[3] The Plaintiffs allege that their Note was transferred to the Bank of New York acting as the Trustee for the
"CWABS Asset-Backed Certificates Trust 2007-13." ECF No. 24-1; ECF No. 24 at 5.  In support of this contention,
Plaintiffs refer to a "Property Securitization Analysis Report" attached to their Amended Complaint. But nowhere in
the public record does Bank of New York appear as having any involvement with Plaintiffs' Note or Deed of Trust.

securitized and that the Defendants have no standing to institute a foreclosure action because "none of the Defendants have an executed true original copy of the Note." *Id.* at 6.

According to the Plaintiffs, one of the Defendants issued a Notice of Intent to Foreclose in December 2015. ECF No. 24 at 10. Although Plaintiffs have defaulted on the Loan, no foreclosure has occurred or is currently pending. On January 21, 2016, Plaintiffs filed a Complaint in the Circuit Court for Prince George's County against Countrywide Bank; Bank of America; Bank of New York as Trustee for Securitized Trust CWABS Asset-Backed Certificates Trust 2007-13; Countrywide Home Loans; CWABS, Inc.; Countrywide Home Loans Servicing LP; Mortgage Electronic Registration System ("MERS"); and Does 1 through 100 inclusive (collectively, "Defendants").[4] The original complaint alleged ten causes of action: (1) Lack of Standing/Wrongful Foreclosure; (2) Fraud in the Concealment; (3) Fraud in the Inducement; (4) Intentional Infliction of Emotional Distress; (5) Slander of Title; (6) Quiet Title; (7) Declaratory Relief; (8) violations of Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA"); (9) violations of the Real Estate Settlement Procedures Act ("RESPA"); and (10) Rescission. ECF No. 2. Defendants timely removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. ECF No. 1.

On June 17, 2016, Plaintiffs filed an Amended Complaint. ECF No. 24. The Amended Complaint eliminates claims regarding lack of standing and intentional infliction of emotional distress. Also, Plaintiffs attached to the Amended Complaint a "Property Securitization Analysis Report" prepared for the Plaintiffs which details the alleged transfers and assignments of the Plaintiffs' Deed of Trust. ECF No. 24-1. Lastly, Plaintiffs newly allege that while they executed

---

[4] Bank of America, N.A., responds in its own capacity and as successor by April 27, 2009 de jure merger with Countrywide Bank, FSB. Bank of America further responds in its own capacity and as successor by July 1, 2011 de jure merger with BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, LP. Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP effective April 27, 2009.

a Deed of Trust and Note, the documents they executed did not involve Countrywide Bank or Bank of America. *See, e.g.*, ECF No. 24 at 5.

After Plaintiffs filed their Amended Complaint, Defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 25. Plaintiffs opposed Defendants' motion to dismiss and requested leave to file a second amended complaint. ECF No. 28. In their opposition, Plaintiffs allege that they never saw the Deed of Trust before Defendants attached it to their motion to dismiss. *Id.* at 3. After reviewing the Deed of Trust, Plaintiffs are convinced that their signatures on the document are forged and "that they did not originate any note or refinance any note with Defendant's [sic] Countrywide Bank." *Id.* To buttress this allegation, they provide personal affidavits attesting that the Deed of Trust was forged by "some third party." ECF No. 29; ECF No. 29-2. Plaintiffs also request leave to amend their Complaint to add additional counts against Countrywide Bank for the alleged forgery.[5]

## II.   STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[5] For the first time in their response, Plaintiffs claim that Defendants falsified the Deed of Trust. Because Plaintiffs failed to plead this alleged falsification in their Amended Complaint, the Court will not consider it when reviewing Defendants' motion to dismiss. *See Porter v. GreenPoint Mortgage Funding, Inc.*, DKC 11-1251, 2011 WL 6837703, at *7 n.11 (D. Md. Dec. 28, 2011) (refusing to consider a claim because it was not alleged in the Complaint); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

(2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A pro se plaintiff is held to a "'less stringent'" standard than a lawyer, and the Court must liberally construe a pro se plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.    ANALYSIS

"A motion to dismiss tests the sufficiency of a complaint," *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013), and a court's evaluation is thus generally limited to a review of the allegations of the complaint itself. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). However, the court may also consider documents that are explicitly incorporated into the complaint by reference, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits. *See* Fed. R. Civ. P. 10(c); *Goines*, 822 F.3d at 166 ("[T]he Court may consider any and all exhibits attached to plaintiff's complaint."). The court may also properly take judicial notice of matters of public record. *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Plaintiffs' individual claims arise from a set of common legal theories. Plaintiffs argue, for example, that the securitization of their mortgage loan amounts to fraud because it effectively "changed the character" of Plaintiffs' Note. ECF No. 24 at 10. Plaintiffs allege that the securitization had "an adverse effect on the value of Plaintiff's [sic] home," without providing any more specificity. But it is well-established in this Court and others that "[a]s a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his or her loan." *Howes v. Wells Fargo Bank, N.A.*, No. ELH-

14-2814, 2015 WL 5836924, at *26 (D. Md. Sept. 30, 2015) (internal quotation marks omitted) (citing cases); *see also Benson v. Ocwen Loan Servicing, LLC*, No. 2:14-CV-02495-TLN, 2014 WL 6775262, at *4 (E.D. Cal. Dec. 1, 2014). "[S]ecuritization merely creates a separate contract, distinct from [Plaintiffs'] debt obligations under the note and does not change the relationship of the parties in any way." *Reyes v. GMAC Mortgage LLC*, No. 2:11-CV-100 JCM RJJ, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (citations and internal quotation marks omitted). It is "not some sort of illicit scheme that taints the underlying debt." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014). Therefore, as a matter of law, the securitization process cannot have harmed Plaintiffs, or, more pointedly, amount to fraud.

Plaintiffs also argue throughout their Amended Complaint that the Defendants do not have an interest in the property because the assignments of their Deed of Trust were not properly executed for a variety of reasons. This Court has consistently held that plaintiffs lack standing to challenge the propriety of the assignment of a mortgage loan. *See, e.g.*, *Henry v. Aurora Loan Servs., LLC*, No. TDC-14-1344, 2016 WL 1248672, at *3 (D. Md. Mar. 25, 2016); *Pruitt v. Bank of Am., N.A.*, No. TDC-15-1310, 2016 WL 337531, at *2 (D. Md. Jan. 28, 2016); *Danso v. Ocwen Loan Servicing, LLC*, No. PX 16-1396, 2016 WL 4437653, at *4 (D. Md. Aug. 23, 2016). In the consumer lending context, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Wolf v. Fed. Nat'l Mortgage Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam) (citation and internal quotation marks omitted).

Here, Plaintiffs were not a party to the assignment from MERS to Bank of America, or from Bank of America to the Trust. Nor were they an intended beneficiary of either of these assignments. Thus, Plaintiffs cannot challenge their validity. *See id.* (holding that a mortgagor

lacks standing to challenge the propriety of the assignment of the note); *Quattlebaum v. Bank of Am., N.A.*, No. CIV.A. TDC-14-2688, 2015 WL 1085707, at *4 (D. Md. Mar. 10, 2015) ("What the lender chooses to do with that entitlement—whether to keep it or to sell it to another financial institution—is a decision [the plaintiff] has no standing to challenge."). The intervening assignments do not affect Plaintiffs' rights in that, regardless of their validity, Plaintiffs "still ha[ve] an obligation under the note to make payments." *Wolf*, 512 F. App'x at 342.

Relatedly, Plaintiffs repeatedly contend that the intervening assignments are invalid because the individual who "robo-signed" the assignment on behalf of MERS, Mr. Miguel Romero, fraudulently held himself out as Vice President for MERS when he was instead an employee of Bank of America. *See, e.g.*, ECF No. 24 at 9; ECF No. 24-1 at 23–25. As a matter of convenience, MERS typically allows employees of mortgage servicers and law firms to enter their names on MERS website, which designates the employees as certifying officers of MERS with the job title of assistant secretary or vice president. *See* Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 144 (2011). In this capacity, these employees can then sign and record documents, such as mortgage assignments, on behalf of MERS. Courts have held that this practice does not give rise to a legally cognizable claim. *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 294 (1st Cir. 2013) (using Massachusetts law); *Bell v. Clarke*, No. CV TDC-15-1621, 2016 WL 1045959, at *4 (D. Md. Mar. 16, 2016) ("The practice is not illegal, and assignments executed in this manner are valid.").

Plaintiffs also challenge Defendants' rights under the Note and Deed of Trust because "Defendants do not have the original Note and Mortgage/Trust of Deed," ECF No. 24 at 4, and that the Note was split from the Deed of Trust. *Id.* at 8. First, this Court has repeatedly rejected

8

the "wet ink" or "show me the note" argument. *See Jones v. Bank of N.Y. Mellon*, No. DKC–13–3005, 2014 WL 3778685, at *4 (D. Md. Jul. 29, 2014); *Harris v. Household Finance Corp.*, RWT–14–606, 2014 WL 3571981, at *2 (D. Md. Jul. 18, 2014) (explaining that "there is no recognizable claim" that a mortgagor must "produce 'wet ink' signature documents" in order for a mortgage to be valid); *Quattlebaum*, 2015 WL 1085707, at *6. Second, in Maryland, the deed and the note cannot be split; "[t]he title to any promissory note . . . conclusively is presumed to be vested in the person holding the record title to the mortgage." Md. Code Ann., Real Prop. § 7–103(a). As the Fourth Circuit has explained, "If we permitted the split-the-note theory . . . , there would be little reason for notes to exist in the first place, as one of the defining features of notes is their transferability." *Scheider v. Deutsche Bank Nat. Trust Co.*, 572 F. App'x 185, 190 (4th Cir. 2014) (citation and internal quotation marks omitted) (using Virginia law). Accordingly, and as more fully explained below, these fatal flaws render Plaintiffs' claims invalid as a matter of law.

## A.      Fraud Claims

In Count One (Fraud in the Concealment), Plaintiffs allege that "Defendants concealed the fact that the loans [sic] were securitized" as well as the nature of such securitization in order to induce Plaintiffs to enter into the "loans," and that Defendants "knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans [sic]." ECF No. 24 at 10. Plaintiffs also allege, without elaboration, that the securitization changed the character of the loan in a way that "had a materially negative effect on Plaintiff [sic]." *Id.*

Similarly, in Count Two (Fraud in the Inducement), Plaintiffs allege that Defendants "intentionally misrepresented to Plaintiff [that] those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust" and misrepresented that they are the

'holder and owner' of the Note and the beneficiary of the Deed of Trust." ECF No. 24 at 11. The Defendants' failure to "disclose the material terms of the transaction induced Plaintiff [sic] to enter into the loans [sic] . . . ." *Id.* Such misrepresentations were made to "induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property." *Id.* Both fraud counts also allege that "Defendants executed improper and fraudulent refinance agreements in favor of Defendants in or about 2009." *Id.* Plaintiffs' belief that a refinance occurred stems from the Analysis Report attached to their Amended Complaint, which suggests the Plaintiffs executed a refinance agreement on May 28, 2009.[6] ECF No. 24-1 at 47.

To support a claim for fraudulent concealment, plaintiffs must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 628 (D. Md. 2013) (emphasis removed); *Green v. H & R Block, Inc.*, 355 Md. 488 (Md. 1999).

To sustain a claim for fraud in the inducement under Maryland law, a plaintiff must allege "(1) that the defendant made a false statement of material fact the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Carroll Co. v. Sherwin–Williams Co.*, 848 F. Supp. 2d 557, 566 (D. Md. 2012) (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693 (Md. 1998)).

---

[6] The Court notes that May 28, 2009 is the date the *original* Deed of Trust was recorded in the Prince George's County Land Records. ECF No. 25-2.

Plaintiffs' fraud claims fail because they did not "state with particularity the circumstances constituting fraud" as required by Federal Rule of Civil Procedure 9(b), namely the time, place, and contents of any false representations or the identities of the wrongdoers that support the claims of fraudulent concealment or inducement. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). Plaintiffs also refer to the Defendants as a collective group throughout their Amended Complaint, making it impossible to determine which particular entity or entities allegedly advanced the complained-of misrepresentations.

Additionally, Plaintiffs' reference to a 2009 "refinance agreement" cannot be squared with the land records that do not reflect any such agreement. *See* ECF No. 25-1 at 4 n.9. Without more, bare allegations regarding a non-specific, fraudulently executed refinance agreement does not provide Defendants with information sufficient to formulate a defense. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *id.* ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."). Moreover, Plaintiffs do not allege how they were harmed by the supposed refinance agreement. Instead, their complained-of injuries seem to relate to the alleged misrepresentations made during the execution of the original Note and Deed of Trust. ECF No. 24 at 10–11.

Finally, and perhaps most fatally, both fraud counts are primarily based on the overarching claim that the loan was improperly securitized into a trust, in violation of the Pooling and Service Agreement, which rendered the assignments invalid. But again, because the securitization process does not by itself amount to fraud, Plaintiffs' claims fail as a matter of law. Plaintiffs also lack standing to challenge the propriety of the mortgage assignments. *See, e.g.*, *Henry v. Aurora Loan Servs., LLC*, No. TDC-14-1344, 2016 WL 1248672, at *3 (D. Md. Mar. 25, 2016). Thus, Counts One and Two must be dismissed.

**B.      Slander of Title**

In Count Three, Plaintiffs assert that Defendants "disparaged" their title by "preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Notice of Assignments, Trustee's Deed, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right." ECF No. 24 at 12. "Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property." *Id.* Plaintiffs' slander of title claim, as pled, is insufficient as a matter of law.

In Maryland, a cause of action for slander of title "may consist of the publication of matter derogatory to the plaintiff's title to his property . . . of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage." *Beane v. McMullen*, 265 Md. 585, 291 A.2d 37, 49 (Md. 1972) (quoting Prosser, *Law of Torts* 919–22 (4th ed. 1971)). Although slander of title resembles defamation, the Plaintiff is required to plead more than simply "disparaging innuendo, as in defamation." *Id.* Because "there is no presumption, as in the case of personal slander, that the disparaging

statement is false . . . the plaintiff must establish its falsity as a part of his cause of action." *Id.* Further, in all cases the Plaintiff must establish that they have "suffered special damage." *Id.*

Here, Plaintiffs' allegations are woefully inadequate.  Although Plaintiffs refer to several documents related to their mortgage in their slander of title claim, they do not allege with specificity what publication is supposedly false, or which of the Defendants created the false publication. And apart from claiming that they "suffered . . . damages in an amount to be proved at trial," Plaintiffs do not aver how the allegedly false publications caused others not to deal with them, interfered with their relations with others, or caused special damages. ECF No. 24 at 12. Little more than bare allegations *vis* slander of title claims are routinely dismissed. *See Brown v. Ocwen Loan Servicing, LLC*, No. PJM 14-3454, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015); *Simmons v. Bank of Am., N.A.*, No. CIV. PJM 13-0733, 2014 WL 509386, at *5 (D. Md. Feb. 6, 2014); *Somarriba v. Greenpoint Mortgage Funding, Inc.*, No. 13-CV-072-RWT, 2013 WL 5308286, at *6 (D. Md. Sept. 19, 2013). This Court will follow suit here.

## C.     Quiet Title

In Count Six,[7] the Plaintiffs seek to quiet title and request that the court "permanently enjoin defendants . . . and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property." ECF No. 24 at 14. Under Md. Code Ann., Real Prop. § 14–108(a), a person in "actual peaceable possession of property" may sue to quiet title when "the person's title to the property is denied or disrupted, or when any other person claims . . . to own the property . . . or to hold any lien encumbrance on it." In Maryland:

> [a] quiet title action is a suit in which a plaintiff seeks a decree that some allegedly adverse interest in his property is actually defective, invalid or ineffective prior to and at the time suit is brought either because the lien was invalidly created, or has become invalid or has been satisfied.

---

[7] In Plaintiffs Amended Complaint, Count Four and Count Five are omitted.

*Kasdon v. G.W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982).

To state a successful quiet title action, the plaintiff must show his claim to title and allege an invalid or defective adverse interest. *Hood v. Aurora Loan Servs.*, No. CCB–10–11, 2010 WL 2696755, at *5 (D. Md. July 6, 2010). Here, Plaintiffs state that they are "alleged to have entered into a consumer credit transaction with Countrywide and Bank of America by obtaining a $638,600 mortgage loan secured by Plaintiff's [sic] principal residence." ECF No. 24 at 13. They go on to claim that the Defendants have no legal right to the North Star Drive property. Yet, they never allege with particularity how it is that Plaintiffs have title to the property, whether because they have paid off the mortgage or by some other means. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 199 (4th Cir. 2014) (observing that the appellant property owners, having executed deeds of trust to secure repayment of loans, "do not, and cannot, plausibly allege that they own legal title to that property"). Nor do they allege that the note or deed of trust is defective and where specifically such defects lie. Because Plaintiffs' Quiet Title claims fail as a matter of law, Count Six must be dismissed.

**D.     Declaratory Judgment**

The Court must also dismiss Plaintiffs' request for declaratory relief. In their Amended Complaint, Plaintiffs broadly request "a judicial determination of the rights, obligations and interest of the parties with regard to the subject property." ECF No. 24 at 14. They also request a determination as to the validity of the loan documents and the Notice of Default they received in December 2015. *Id.* at 15.

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties. A

declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

Federal courts issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001 (D. Md. 1985). Generally, the presence of a case or controversy depends on whether the facts alleged show a controversy "of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Even where a declaratory judgment request meets both of these requirements, the district court, in its discretion, must be satisfied that declaratory relief is appropriate. *See White v. National Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961)); *Glenmont Hill Associates v. Montgomery Cnty., Md.*, 291 F. Supp. 2d 394, 397 (D. Md. 2003) ("[W]hile a federal court is authorized to issue a declaratory judgment, it is not obligated to do so.").

The same deficiencies that plague Plaintiff's claims render imposition of declaratory judgment impossible. Plaintiff's allegations are altogether too vague and threadbare for the Court to declare the parties' rights that would resolve a dispute or otherwise serve a useful purpose. *See Simmons v. Bank of Am., N.A.*, No. CIV. PJM 13-0733, 2014 WL 509386, at *7 (D. Md. Feb. 6, 2014) (dismissing a claim for declaratory relief under similar circumstances). Mere averments that Plaintiff should be granted "quiet and peaceful possession of the above-described real property" does not provide a sufficient factual predicate for proceeding on the request for

Declaratory Judgment. ECF No. 24 at 15. Accordingly, the Court will decline to enter declaratory relief.

**E.        Violations of TILA, HOEPA, and RESPA**

Count Eight ("Violation of TILA and HOEPA, 15 U.S.C. § 1601, et. seq.") and Count Nine ("Violation of RESPA, 1 U.S.C. § 2601, et. seq.") both fail as a matter of law. Regarding TILA and HOEPA, Plaintiffs allege that Defendants did not fully inform Plaintiffs of the pros and cons of an adjustable rate mortgage and failed to advise them that they should search for similar products with other lenders in order to make a comparison. ECF No. 24 at 15. All actions for damages under TILA and HOEPA must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also McLeod v. PB Inv. Corp.*, 492 F. App'x 379, 387 (4th Cir. 2012). "The limitations period begins to run when the borrower accepts the creditor's extension of credit." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 472 (D. Md. 2012); *Moseley v. Countrywide Home Loans, Inc.*, 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010).

Plaintiffs allege that Defendants are liable violations of TILA and HOEPA that occurred during the origination of their loan on January 10, 2008. Thus, the statute of limitations expired on January 10, 2009. *See Rodrigues v. Members Mortgage Co.*, 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (stating that one-year statute of limitations on claim for damages starts to run on date disclosures should have been made and citing cases). Plaintiffs filed their original complaint on January 21, 2016, more than 8 years after the loan documents were executed. Thus, Plaintiffs' TILA and HOEPA claims are barred by limitations.

Plaintiffs' RESPA claim seems to stem from either §§ 2607 or 2608, which are the only sections of RESPA that may impose civil liability for actions taking place during the loan

origination process. Plaintiffs believe Defendants failed to disclose that they would gain a financial benefit from the loan transaction "while Plaintiff [sic] suffer[ed] financially as a result of the loan product sold to Plaintiff." ECF No. 24 at 17. Claims brought under § 2605 are governed by a three-year statute of limitations, while claims brought under § 2607 are subject to a one-year statute of limitations. 12 U.S.C. § 2614. The limitations period begins to run "from the date of the occurrence of the violation," which generally refers to the date of closing for loan origination violations. *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012); *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 117 (D.D.C. 2011); *Brown v. Wilmington Fin.*, No. CCB−11−699, 2012 WL 975541, at *4 (D. Md. Mar. 21, 2012). As previously stated, the loan originated in January 2008, but Plaintiffs waited until January 21, 2016 to file their first complaint. Thus, Counts Eight and Nine are both time-barred and must be dismissed with prejudice.

Evidently aware of their limitations bar, Plaintiffs' Amended Complaint refers in passing to the doctrine of equitable tolling. Specifically, Plaintiffs aver that "[a]ny and all statutes of limitations relating to disclosures and notices . . . were tolled due to Defendants' failure to effectively provide the required disclosures and notices." ECF No. 24 at 16. The Plaintiffs further allege that "the deceptive, fraudulent, and self-serving acts have only become discoverable to Plaintiff on November 14, 2015." *Id.* at 17.

To succeed in tolling the statute of limitations on equitable grounds, a plaintiff must allege with specificity "fraudulent concealment on the part of the defendants" and the inability of the plaintiff, despite due diligence, to discover the fraud. *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 792 (D. Md. 1998) (applying equitable tolling to alleged RESPA and TILA violations) (citing *Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1125−28 (D. Md. 1981));

*Brown*, 2012 WL 975541, at *4–5 (reasoning that a plaintiff "seeking to escape the statute in such a case [must] make distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery [was], so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made").

Here, the Amended Complaint's conclusory statement that a fraud occurred is not enough to toll the statute of limitations. *See Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974) ("[M]erely intoning the word 'fraudulently' in a complaint is not sufficient to raise the [doctrine of equitable tolling]."). Additionally, the Amended Complaint's allegations regarding Defendants' RESPA violations also do not toll limitations. *Cf. Davis*, 523 F. Supp. at 1126 (explaining that "[a]pplication of the fraudulent concealment doctrine in the context of the disclosure requirements of . . . TILA requires more than mere nondisclosure" because "[o]therwise, in a context in which nondisclosure is the gravamen of the violation, then just about every failure by defendant to disclose as required by . . . TILA would seemingly bring about tolling"). Thus, the doctrine of equitable tolling does not save these claims.

## F.    Rescission

Finally, the Plaintiffs maintain that they are entitled to a rescission of the loan because of: (1) Defendants' TILA violations; (2) failure to provide a Mortgage Loan Origination Agreement; (3) fraudulent concealment; (4) fraudulent inducement; (5) failure to abide by the Pooling and Service Agreement; (6) making illegal or fraudulent transfers of the note and the Mortgage/Deed of Trust; and (7) public policy grounds. ECF No. 24 at 17–18. This Court disagrees. As the Defendants correctly observe, Plaintiffs appear to seek rescission as a remedy for Defendants' other alleged violations of law, rather than as an independent cause of action. As a result, Plaintiffs' claim depends on their ability to sustain viable claims their other causes of action.

However, Plaintiffs have failed to state a viable claim on any of these grounds. Nor do the Plaintiffs sufficiently put forward public policy reasons meriting rescission here. Plaintiffs' rescission count, therefore, must be dismissed.

**G.      Second Request for Leave to Amend the Complaint**

In their response in opposition to Defendants' motion to dismiss, Plaintiffs request leave to amend their complaint a second time to include additional claims for fraud, fraudulent misrepresentation, fraudulent inducement, fraudulent concealment, violations of TILA and violations of RESPA arising out of the origination and execution of the Deed of Trust. ECF No. 28 at 3–4. Plaintiffs' proposed amendment would incorporate allegations that they never executed a mortgage in favor of Countrywide Bank and that they have never seen the Deed of Trust attached to Defendants' motion to dismiss. After reviewing the attached Deed of Trust, they now claim that their signatures on the document were forged. *Id.* at 3. They have also provided personal affidavits in which they assert that their signatures on the document were affixed by "some third party signing my signature without my consent or knowledge." *See, e.g.*, ECF No. 29.

A district court may deny a motion to amend a complaint "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010). Defendants argue that a second amended complaint would be futile because Plaintiffs' potential claims appear to be related to the origination and execution of a Deed of Trust executed in January 2008 and are therefore time-barred. ECF No. 31 at 5.

Plaintiffs counter that equitable tolling is warranted because they were not aware of the Deed of Trust's existence until July 2016, when Defendants included the document as an

attachment to their motion to dismiss. Plaintiffs' more particularly assert that only after

Defendants provided the Deed of Trust in their pleadings the Plaintiffs conclude that their

signatures were forged. Relying on the "discovery rule," which states that "the cause of action

accrues when the claimant in fact knew or reasonably should have known of the wrong,"

Plaintiffs thus claim the limitations period began to run as of July 2016. *Virtual Physical Ctr.*

*Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 846 (D. Md. 2007)

(quoting *Poffenberger v. Risser*, 290 Md. 631, 636 (Md. 1981).

The Court finds Plaintiffs' argument unconvincing and in direct conflict with those facts

that they have pleaded as true in their Amended Complaint. Plaintiffs, for example, do not deny

that they executed a Note and Deed of Trust in 2008. In fact, they admit that they "executed a

series of documents, included but not limited to a Note and Mortgage/Deed of Trust, securing the

Property in the amount of the note." ECF No. 24 at 5. Plaintiffs further complain that at the time

they executed the loan documents, the Defendants failed to explain the "workings of the entire

mortgage loan transaction," and admit that "[t]he purpose of entering into the above-described

mortgage loan transactions was for Plaintiff to eventually own the Property." *Id.* at 9.  Thus,

Plaintiffs were on notice that a Deed of Trust existed encumbering their North Star Drive

property. What is more, the Deed of Trust, which names Countrywide Bank as the Lender, was

recorded in the Prince George's County Land Records on May 28, 2009. ECF No. 31 at 6. Thus,

as of the 2009 recordation, a reasonable Plaintiff could have obtained the document and analyzed

the Deed of Trust executed on the very loan for which they were making loan payments and

uncover the forgery. Accordingly, any claims arising from this alleged forgery began to accrue in

2009 and are now time barred. Plaintiffs' request for leave to amend is denied as futile.

IV.     **CONCLUSION**

For the reasons stated above, the Defendants' motion to dismiss is granted and the

Plaintiffs' motion for leave to amend is denied.


 10/4/2016                                                                    /S/
Date                                               Paula Xinis
                                                   United States District Judge